NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2014-0762


STEVEN J. COHEN

v.

JOHN RAYMOND & a.

Argued: September 24, 2015
Opinion Issued: November 17, 2015

Shaheen & Gordon, P.A., of Concord (Steven M. Gordon and Benjamin T. Siracusa Hillman on the brief, and Mr. Hillman orally), for the plaintiff.


Orr & Reno, P.A., of Concord (Robert S. Carey on the brief and orally), for defendant John Raymond.


HICKS, J. The plaintiff, Steven J. Cohen, appeals an order of the Superior Court (McNamara, J.) ruling that $250,000 that Cohen deposited into an investment account in the name of defendant John Raymond was an unconditional gift. Cohen argues, among other contentions, that the trial court erred by: (1) finding that the $250,000 was an unconditional gift, rather than a loan or a conditional gift; and (2) presuming that the $250,000 was a gift, thereby placing the burden on Cohen to show that it was not a gift. Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), as trustee, did not participate in this appeal. We vacate and remand.

The trial court found the following facts. Cohen met Raymond when Raymond began dating Cohen's stepdaughter, Molly, whom Raymond eventually married. Cohen owned a successful scrap metal company and offered Raymond a job. Cohen assigned Raymond the company's "tough dirty jobs," which Raymond successfully performed. Cohen soon regarded Raymond as one of his most valuable assistants.

In 2006, Cohen sold his company to a corporation named Schnitzer. Schnitzer gave Cohen and Raymond three-year employment contracts. Both were also constrained by noncompete agreements. Raymond's agreement was set to expire after six months, but Cohen's was to last for a number of years. The pair quickly grew restless at Schnitzer, and began to discuss new business opportunities. These discussions resulted in several trips, including a trip to Germany, to observe other scrap metal operations. During these trips, Cohen and Raymond frequently spoke about investment ideas.

Cohen knew a broker and private wealth manager at Merrill Lynch, and Cohen testified that he wanted to help Raymond learn about investment through that broker. To set up an investment account, Merrill Lynch required a minimum deposit of $250,000. In January 2010, Cohen deposited this amount into an account in Raymond's name. Cohen testified that he considered the money to be "seed money" for a business that he planned to open with Raymond. Although Raymond testified that he never intended to go into business with Cohen, the trial court found that "the parties had decided to enter the recycling business together . . . in some fashion after Cohen's non-compete [agreement] expired."

In the fall of 2012, Raymond and Molly decided to divorce. Raymond then withdrew $50,000 from the Merrill Lynch account, which he used for "personal purposes." Upon learning of the divorce and withdrawal, Cohen demanded that Raymond repay him the $250,000, and then sued Raymond in superior court. Cohen claimed that the money was a loan, and that he was entitled to repayment with interest at 5% or 6%. In the alternative, Cohen claimed that Raymond had been unjustly enriched, and that he was entitled to restitution.

The trial court conducted a bench trial on November 18, 2013, and received post-hearing memoranda from the parties. In his argument on unjust enrichment, Cohen suggested, for the first time, that the $250,000 was a conditional gift. The condition, the trial court later determined, was that Raymond use the $250,000 toward a joint business venture with Cohen. According to Cohen, when Raymond withdrew the money, he violated that condition. On January 7, 2014, the trial court ruled that the $250,000 was a conditional gift and ordered restitution.

Raymond moved for reconsideration, asserting that the trial court had "decided the case on a theory Mr. Cohen had never pleaded." Raymond argued that, if Cohen had included the conditional gift claim in his original complaint, Raymond would have engaged in additional discovery and presented additional evidence to refute it. On February 28, 2014, the trial court granted Raymond's motion and set aside its January order.

The court conducted a second bench trial on October 14, 2014. Cohen testified again, insisting that the $250,000 was a loan. When asked about gifts on cross-examination, Cohen stated that "[a] gift is a gift," and that he had never made a gift with strings attached.

Following the second trial, the trial court issued its order on November 4, 2014. First, the court found that the parties did not intend to enter into a loan agreement. The court then applied a "weak" presumption that Cohen had given Raymond the $250,000 as a gift, placing on Cohen the burden of proving the transfer was not a gift. Finally, quoting Cohen's testimony that "[a] gift is a gift," the court found that Cohen had not met his burden, and that the $250,000 was an unconditional gift. Cohen appealed.

We begin with the trial court's application of the "weak" gift presumption. Whether to apply a particular presumption, and thereby place the burden of proof on a particular party, is a question of law, which we review de novo. Cf. Estate of Abraham v. C.I.R., 408 F.3d 26, 35 (1st Cir.) ("We review the allocation of the burden of proof, a question of law, de novo."), amended by 429 F.3d 294 (1st Cir. 2005). We hold that the gift presumption does not apply to transfers of property solely to in-laws. We also clarify that, although a "weak" gift presumption may apply to transfers from parents to their children and in-laws jointly, no such presumption applies when, as here, the transfer of property was for an in-law's sole benefit. Thus, we conclude that the trial court erred in applying the gift presumption. Finally, we acknowledge Raymond's argument that, without the gift presumption, he would still satisfy his burden of proving that the $250,000 was a gift. However, we leave this argument, along with Cohen's breach of contract and unjust enrichment claims, for the trial court to address on remand.

In applying the "weak" gift presumption, the trial court relied upon Chamberlin v. Chamberlin, 116 N.H. 368, 370-71 (1976). There, we discussed the presumption in a case in which a mother and father took title to a piece of property along with their son and daughter-in-law as joint tenants, and then sued to "impress a resulting trust . . . and for a decree that [the] real estate [was their] sole property . . . ." Chamberlin, 116 N.H. at 368-69. Cohen argues that Chamberlin should be distinguished from the instant case because, although in both cases an in-law was "involved" in the conveyance of a property interest, the daughter-in-law in Chamberlin, unlike Raymond, was not "the sole grantee." We agree.

3

At the outset, we note that many of the gift presumption cases cited by both parties, including <u>Chamberlin</u>, deal with claims to impose resulting trusts, not breach of contract or unjust enrichment claims like Cohen's. Neither party comments on the differences among these kinds of claims. But, because we hold that the gift presumption does not apply in this case, we need not determine, as a general matter, whether the presumption applies to claims of breach of contract or unjust enrichment. <u>Cf.</u> <u>Hornyak v. Sell</u>, 629 A.2d 138, 140-41 (Pa. Super. 1993) (questioning whether the gift presumption applies to a breach of contract claim).

Generally, the burden of proving that a transfer of property is a gift is on the grantee or the party who asserts that a gift has been made. <u>Bean v. Bean</u>, 71 N.H. 538, 541 (1902); 38 Am. Jur. 2d <u>Gifts</u> § 79, at 836 (2010). However, we have held that "[a] transfer of property between family members creates a rebuttable presumption that a gift was intended." <u>Murano v. Murano</u>, 122 N.H. 223, 228 (1982). This "presumption is strongest when the grantee is the wife of the payor or a minor child[,] . . . less strong in the case of an adult son and weaker when a daughter-in-law is involved." <u>Chamberlin</u>, 116 N.H. at 371 (citations omitted). In <u>Chamberlin</u>, we described the presumption in the context of the transfer of a piece of property held in joint tenancy by two parents, a son, and a daughter-in-law, not a transfer of property to a daughter-in-law alone. <u>See</u> <u>id</u>. We noted in <u>Chamberlin</u> that the daughter-in-law was "involved." <u>See</u> <u>id</u>. She was "involved" because she was a joint beneficiary of a property interest along with the parents' own child. <u>See</u> <u>id</u>. <u>Chamberlin</u> therefore offers little guidance about the presumption's application in cases, like this one, that involve a transfer of property exclusively to an in-law.

Three reasons justify limiting the gift presumption to transfers of property between or among close family members. The first is "common practice." <u>See</u> R. Chester & G. Bogert, <u>Trusts & Trustees</u> § 460, at 455 (3d ed. 2005). Parents routinely make gifts to their minor and adult children. <u>See</u> <u>id</u>. at 455, 461-65. Many of these transfers occur without formalities; frequently there is no accompanying documentation reflecting the parent's intent to make a gift. But, because of their routine nature, it is usually safe to presume that transfers of property from parents to their children are intended as gifts. This presumption is, of course, rebuttable. <u>Murano</u>, 122 N.H. at 228. When the presumption is rebutted, then the burden shifts to the parents to show, by words or actions, that they did not intend to make a gift. <u>See</u> <u>id</u>. But gifts from parents to in-laws, who are the sole beneficiaries, are not similarly common. The presumption of a gift in such a case is, therefore, not warranted.

Second, limiting the gift presumption to transfers between or among close family members makes it easier to apply. Raymond argues that the trial court's application of the presumption was correct because, given the parties' personal history, Raymond was "like family" to Cohen. According to Raymond, "Cohen hired [him], trained [him], mentored [him], [and] traveled with [him]."

4

In other words, Raymond urges us to rule that the gift presumption's application depends less upon the parties' actual familial relationship, and more upon the grantor's particular affection for the grantee. We decline to do so. If affection were the measure of the gift presumption's strength, the presumption may extend well beyond in-laws to close friends and other more distant relations.

Alternatively, Raymond urges us to uphold the gift presumption's application here because Raymond, as Cohen's son-in-law, was the "natural object of Cohen's bounty." The natural-object concept is generally associated with the four-part test for determining a person's capacity to make a will. See Restatement (Third) of Property § 8.1(b), at 106-07 (2003). It also appears in Restatement (Third) of Trusts § 9(2) at 124 (2003):

> Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a spouse, descendant, or other natural object of the bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property.

(Emphasis added.) But the natural-object concept is as expansive as the affection rationale discussed above:

> Relatives by affinity do not take by intestacy but could be counted as natural objects of a testator's bounty in the case in which the testator was close to them . . . . The natural objects of the testator's bounty might [also] include nontraditional as well as traditional family members.

Restatement (Third) of Property, supra § 8.1(b) cmt. c at 108. Because the natural-object approach, like the affection approach, is too uncertain a standard for application of the gift presumption, we choose not to adopt it.

Finally, we note that other states have declined to extend the gift presumption to property transfers involving in-laws. See, e.g., Ryan v. Ryan, 267 So. 2d 700, 702 (Ala. 1958) ("The only relationship which the evidence shows to have existed between Lydia Roberts, deceased, and the appellant was that of mother-in-law and son-in-law; no presumption of a gift therefore arises."); Jocoy v. Jocoy, 562 S.E.2d 674, 676 (S.C. Ct. App. 2002) ("In our view, the better approach is that no gift is presumed to a son-in-law or daughter-in-law."). Raymond cites four out-of-state cases that apply the gift presumption to transfers of property to in-laws. But of those four, two concern gifts from parents to children and in-laws together and thus are distinguishable from the instant case. See In re Marriage of Kendra, 815 N.E.2d 22, 23-26 (Ill. App. Ct. 2004) (applying the gift presumption to a

5

transfer of a "40-acre tract of undeveloped land" from parents to a daughter and son-in-law jointly); cf. Hornyak, 629 A.2d at 141 (finding that "even if [the presumption] did apply, it was rebutted," where parents transferred $5,000 to a son-in-law for use toward a down payment on a home for both the parents' daughter and the son-in-law). The other two cases involve gifts to in-laws alone. See Somer v. Bogart, 749 S.W.2d 202, 203-04 (Tex. App. 1988); Exadaktilos v. Cinnaminson Realty Co., 400 A.2d 554, 558 (N.J. Super. Ct. Law Div. 1979), aff'd, 414 A.2d 994 (N.J. Super. Ct. App. Div. 1980). For the reasons stated above, we do not find these decisions persuasive.

Here, Raymond was Cohen's son-in-law. Thus, the gift presumption does not apply, and the burden should have been on Raymond to prove that Cohen intended to give him the $250,000 as a gift. We, therefore, vacate the trial court's November 2014 order and remand for further proceedings as the trial court deems necessary, including consideration of the evidence relating to Cohen's breach of contract and unjust enrichment claims absent the gift presumption.

Vacated and remanded.

DALIANIS, C.J., and CONBOY, J., concurred.